# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

John A. Tibbs and Margaret B. Tibbs, Respondents,

v.

3M Company; 4520 Corp., Inc.; A.O. Smith Corporation; A. W. Chesterton Company; ABB Inc.; Air & Liquid Systems Corporation; AIW-2010 Wind Down Corp.; Amentum Environment & Energy, Inc.; Anchor/Darling Valve Company; Armstrong International, Inc.; Asbestos Corporation Limited ASCO, L.P.; Atlas Asbestos Co.; Atlas Turner, Inc.; AWT Air Company, Inc.; Bahnson, Inc.; Banner Industries International, Inc.; Banner Industries, LLC; Banner Industries of N.E., Inc.; Barretts Minerals, Inc.; Beaty Investments, Inc.; Bechtel Corporation; The Bonitz Company; Brand Insulations, Inc.; BW/IP, Inc.; Canvas CT, LLC; Cape plc; Carboline Company; CB&I Laurens, Inc.; Cleaver-Brooks, Inc.; Consolidated Electrical Distributors, Inc.; Copes-Vulcan, Inc.; Covil Corporation; Crane Instrumentation & Sampling, Inc.; Crosby Valve, LLC; Daniel International Corporation; Davis Mechanical Contractors, Inc.; Dezurik, Inc.; Duke Energy Carolinas, LLC; Duke Energy Corporation; Eaton Corporation; Ellington Insulation Company, Inc.; Emerson Electric Co.; Fisher Controls International, LLC; Flame Refractories, Inc.; Flowserve Corporation; Flowserve US, Inc.; Fluor Constructors International; Fluor Constructors International, Inc.; Fluor Daniel Services; Fluor Enterprises, Inc.; FMC Corporation; Foster Wheeler Energy Corporation; Gardner Denver Nash, LLC; General Boiler Casing Company, Inc.; General Cable Corporation; General Cable Industries, Inc.; General Electric Company; Gould Electronics, Inc.; Goulds Pumps, Incorporated; Goulds Pumps, LLC; Great Barrier Insulation Co.; Grinnell, LLC; Hajoca Corporation; Howden North America, Inc.; HPC Industrial Services,

LLC; IMO Industries, Inc.; ITT, LLC; Joy Global Underground Mining, LLC; K-Mac Services, Incorporated; Metropolitan Life Insurance Company; Mine Safety Appliances Company, LLC; MP Supply, Inc.; The Nash Engineering Company; Occidental Chemical Corporation; Paramount Global; Patterson Pump Company; PECW Holding Company; Pfizer, Inc.; Piedmont Insulation, Inc.; Plastics Engineering Company; Presnell Insulation, Co., Inc.; Redco Corporation; Riley Power, Inc.; Rockwell Automation, Inc.; RSCC Wire & Cable, LLC; Schneider Electric USA, Inc.; Sequoia Ventures, Inc.; Spirax Sarco, Inc.; SPX Corporation; Stafford Insulation Company; Standard Insulation Company of N.C., Inc.; Starr Davis Company, Inc.; Starr Davis Company of S.C., Inc.; Sterling Fluid Systems (USA), LLC; TE Wire & Cable, LLC; Thermo Electric Company, Inc.; Union Carbide Corporation; Valves and Controls US, Inc.; Velan Valve Corp.; Viking Pump, Inc; Vistra Intermediate Company, LLC; The William Powell Company; Wind Up, Ltd.; Yuba Heat Transfer LLC; and Zurn Industries, LLC, Defendants,

And Cape plc, individually and as successor in interest to Cape Asbestos Company Limited, by and through its duly appointed Receiver Peter D. Protopapas, Respondent,

v.

Anglo American PLC, individually and as successor in interest to Anglo American Corporation of South Africa, Ltd.; DeBeers, PLC, individually and as successor in interest to DeBeers S.A.; DeBeers Centenary AG; DeBeers Consolidated Mines, Ltd., n/k/a DeBeers Consolidated Mines Proprietary, Ltd.; DeBeers UK, Ltd.; DeBeers Jewelers, Ltd.; DeBeers Jewelers US, Inc.; Anglo American US Holdings, Inc.; Element Six US Corp.; Element Six Technologies US Corp.; Element Six Technologies (OR) Corp.; First Mode Holdings, Inc.;

Platinum Guild International (USA) Jewelry, Inc.; Lightbox Jewelry, Inc.; Forevermark US, Inc.; Anglo American Crop Nutrients (USA), LLC; Charter Consolidated, Ltd.; ESAB Corporation; Central Mining & Investment Corporation, Ltd.; Cape Holdco, Ltd.; The Law Debenture Corporation, PLC; Cape Industrial Services Group, Ltd.; Mohed Altrad; Altrad UK, Ltd.; Cape UK Holdings Newco, Ltd.; Altrad Services, Ltd., f/k/a Cape Industrial Services Ltd.; Altrad Investment Authority S.A.S.; Sparrows Offshore Group, Ltd.; Hawk Bidco US, Inc.; Arranco US, LLC; Sparrows Offshore, LLC; The Sparrows Group, LLC, Third-Party Defendants,

Of Which Charter Consolidated, Ltd.; ESAB Corporation; Central Mining & Investment Corporation, Ltd.; Mohed Altrad; and Altrad Investment Authority S.A.S., are the Appellants.

Appellate Case No. 2025-002104

_____

Appeal From Richland County
Jean Hoefer Toal, Acting Circuit Judge

_____

Opinion No. 28337
Heard February 25, 2026 – Filed May 27, 2026

_____

**AFFIRMED AS MODIFIED IN PART AND REVERSED IN PART**

_____

A. Victor Rawl, Jr. and William James Blount, of Gordon & Rees LLP, of Charleston, for Appellants Charter Consolidated, Ltd., ESAB Corporation, and Central Mining & Investment Corporation, Ltd.

Kevin A. Hall and Matthew Todd Carroll, of Womble Bond Dickinson (US) LLP, of Columbia; and Mary Elizabeth O'Neill, of Womble Bond Dickinson (US) LLP, of Charlotte, North Carolina; all for Appellants Altrad Investment Authority S.A.S. and Mohed Altrad.

Gray Thomas Culbreath and John Thomas Lay, Jr., of Gallivan, White & Boyd, PA, of Columbia; Lindsay Anne Joyner and Eleanor Lasseigne Jones, of Gallivan, White & Boyd, PA, of Charleston; Jonathan M. Robinson and Shanon N. Peake, of Smith Robinson Holler DuBose Morgan, LLC, of Columbia; George Murrell Smith, Jr., of Smith Robinson Holler DuBose Morgan, LLC, of Sumter; Troy S. Brown, of Philadelphia, Pennsylvania; Lauren McCulloch Semlinger, of Houston, Texas; and Paul A. Scrudato, of New York, New York; all for Respondent Cape, PLC.

Theile Branham McVey, John D. Kassel, and Jamie Rae Rutkoski, of Kassel McVey, of Columbia; Charles William Branham, III and David Christopher Humen, of Dean Omar Branham Shirley, LLP, of Dallas, Texas; all for Respondents Margaret B. Tibbs and John A. Tibbs.

James Ledlie of Motley Rice, LLC, of Mount Pleasant, as Amicus Curiae for Motley Rice, LLC. Kush A. Shukla of Meirowitz & Wasserberg, LLP, of Columbia, as Amicus Curiae for Meirowitz & Wasserberg, LLP. Joshua Drew Cagle of Maune, Raichle, Hartley, French & Mudd, LLC, of Mount Pleasant, as Amicus Curiae for Maune, Raichle, Hartley, French & Mudd, LLC. Kenneth J. Wilson of Roger, Patrick, Westbrook & Brickman, LLC, as Amicus of Curiae for Rogers, Patrick, Westbrook & Brickman, LLC. Thomas A. Limehouse, Jr. of Limehouse LLC, as Amici Curiae for Santa Fe Braun, Inc.; Rentavla, LLC; ITT, LLC; Goulds Pumps, LLC; Dovers, LLC and Velvet V. Corporation. William Camden Lewis of Richardson Thomas, LLC, of Columbia; Terry E. Richardson, Jr. of Richardson Thomas, LLC, of Barnwell; Robert W. Cowan of Bailey

Cowan Heckaman, PLLC, of Houston Texas, all as Amicus Curiae for Asbestos Victims. Jenna Brooke Kiziah McGee of Parker Poe Adams & Bernstein, LLP, of Charleston, as Amicus Curiae for New-Indy Containerboard, LLC. Wesley Brian Sawyer of Murphy & Grantland, PA, of Columbia, as Amicus Curiae for National Union Fire Insurance Co. of Pittsburgh, PA. Beattie B. Ashmore of Beattie B. Ashmore, PA, of Greenville, as Amicus Curiae.

---

**JUSTICE HILL:** This is an appeal from an order in an asbestos case confirming the appointment of a receiver over Cape Intermediate Holdings Limited (CIHL), an English company. We refer to the order as the Confirmation Order. The case was brought by John A. Tibbs and his wife, who sued numerous defendants alleging they had caused Mr. Tibbs' lung cancer. The Tibbs' complaint named Cape plc as one of the defendants.

It is helpful to begin by straightening out the confusion about which "Cape" entity is the real party in interest in this litigation. Both Cape plc and CIHL are descendants of Cape Asbestos Company, LTD, which was incorporated in England in 1893. Space and time do not allow us to recount the vertigo-inducing chronology of changes to the name and corporate form Cape Asbestos Company, LTD has undergone since its 1893 birth. What matters is that everyone agrees the correct entity is CIHL, and the Confirmation Order reflects this change.

There have been pleadings and orders in this case and another asbestos case known as *Park* (which we will soon discuss) that name Cape plc as the defendant. It appears this Cape plc was a successor in interest to Cape Asbestos Company, LTD, and predecessor in interest to CIHL, facts these papers spell out. This Cape plc was an English company, and the name of the Cape group from 1989 to 2011. Appellants argue that the Cape plc that is named in these cases is not the English company known as Cape plc, but the entity named Cape plc that was incorporated in the Bailiwick of Jersey in 2011 (Cape Jersey) and is a current parent company of CIHL. They make this argument–which was accepted by an English court decision we will later discuss–in part to claim that Cape Jersey cannot be responsible for any conduct any Cape company took before 2011. For our purposes, we agree with the trial court that CIHL is the correct defendant. Any reference to "Cape" in this opinion refers to CIHL and its predecessors and affiliates, not Cape Jersey.

The trial court had earlier appointed a receiver for Cape plc in *Park v. Armstrong International, Inc.*, Case No. 2021-CP-40-02727, another asbestos case where it had not answered or appeared. Keith Park, who had been the personal representative for his mother Isabella Park's estate, moved for the Receiver to be appointed. Due to confusion or miscommunication, and unbeknownst to Keith's trial counsel and the trial court, the Park estate had been closed, and Keith's appointment as personal representative had been terminated before he filed the motion. The trial court granted Keith's motion in 2023. It appears trial counsel did not learn of the estate closure until 2025, at which time the estate was reopened and Keith was reappointed as personal representative.

The *Park* Appointment Order directed the Receiver to, among other things, "administer all assets of Cape, accept service on behalf of Cape, engage counsel on behalf of Cape and take any and all steps necessary to protect the interests of Cape whatever they may be." Although the order emphasized the Receiver was to collect and administer "any insurance assets of Cape," the third paragraph of the order gave the Receiver sweeping powers over Cape's property.

Relying on the *Park* Appointment Order, the Receiver accepted service of the Tibbs' complaint on behalf of Cape plc. The Receiver answered the complaint and brought a third-party complaint against several parties, including (1) Altrad Investment Authority SAS and Mohed Altrad (collectively, the Altrad appellants), and (2) Charter Consolidated Ltd., ESAB Corporation, and Central Mining & Investment Corporation Ltd. (collectively, the Charter appellants), who are the Appellants now before us. The Receiver's third-party complaint alleges causes of action for unjust enrichment, constructive trust, alter-ego/amalgamation, and accounting.

Appellants answered the third-party complaint and also moved to dismiss it, contending the trial court lacked personal jurisdiction over Cape and them. They also moved to dissolve the receivership over Cape. After the trial court denied both motions, Appellants appealed and filed two petitions for writ of certiorari. The appeals were dismissed as interlocutory. In the meantime, we decided *Welch v. Advance Auto Parts, Inc.*, 445 S.C. 640, 916 S.E.2d 320 (2025), *cert. denied sub nom. Atlas Turner, Inc. v. Welch*, No. 25-213, 2026 WL 79875 (U.S.S.C. Jan. 12, 2026), which set forth guidelines for appointing a receiver before judgment and clarified the scope of the receiver's authority in that case. In the wake of *Welch*, we granted Appellants' two pending certiorari petitions and remanded to the trial court with instructions directing the trial court to confirm the Receiver's appointment and scope of authority complied with *Welch*. We further directed the trial court to ensure "the receiver has been authorized to conduct its work by an order filed in the specific

case as to which the work is to take place. The receiver is not to be authorized to conduct work as to a case in which no receiver appointment order has been filed." The order also warned the parties against filing future improper petitions or interlocutory appeals (Appellants have filed over a dozen related to this case) or engaging in other inappropriate behavior, and it held several motions for sanctions in abeyance.

Once *Tibbs* was remanded, Appellants renewed their attacks on the *Park* Appointment Order. For his part, the Receiver sought an order confirming that his appointment in *Park* satisfied *Welch* and our remand instructions.

On October 13, 2025, the trial court issued the Confirmation Order. Besides clarifying that CIHL was the correct defendant, the Confirmation Order ruled that a pre-judgment receiver was warranted for CIHL because it had engaged in moral fraud and was in danger of insolvency. The Confirmation Order also scaled back the scope of the Receiver's authority.

This appeal followed. Appellants challenge the Confirmation Order on numerous fronts. They claim the Confirmation Order is void because it is merely a continuation of the *Park* Appointment Order and not a receivership order entered "in the specific case" as our June 26 remand order required. Appellants further contend the Confirmation Order is illegitimate because it relied on the *Park* Appointment Order, which they claim was void or invalid for various reasons that we will soon examine. Appellants also maintain the Confirmation Order runs afoul of *Welch*, and that no personal jurisdiction exists over either CIHL or the Appellants.

We now address these arguments, mindful our standard of review requires us to uphold the Confirmation Order unless the trial court exceeded its wide discretion in imposing it. *See Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989) (providing "the appointment of a receiver is within the discretion of the circuit judge").

I.

    A. <u>Whether the Confirmation Order was a Receivership Order Filed in this "Specific Case"</u>

The trial court believed it was complying with the remand order by filing the *Park* Appointment Order and the Confirmation Order in the *Tibbs* action. We understand the trial court's reasoning and agree the filing met the spirit of our instructions. We

also acknowledge that where a general receiver has been appointed, it is not always practical or efficient to require a new receivership appointment process in every case in which the receiver may need to act. *See Adler v. Seamen*, 266 F. 828, 838–39 (8th Cir. 1920); *see also* Rule 66, SCRCP. In such instances, the traditional practice has been for the receiver to return to the appointing court and seek an expansion of his authority allowing him to act in the new matter. *See Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 341–42 (Minn. Ct. App. 2009); 1 Ralph Ewing Clark, *Clark on Receivers* § 108 (3d ed. 1959); 75 C.J.S. Receivers § 63 (March 2026 Update). But in this case, the Receiver (who is a pre-judgment, rather than general, receiver) did not seek such permission, and the trial court did not require it.

In future cases, a pre-judgment receiver should not be authorized to take control of a company's assets or otherwise act in lawsuits outside the case in which he is appointed. Of course, if a receiver is appointed after judgment, the trial court has much more latitude in permitting the receiver to operate in other matters or lawsuits and in expanding the receiver's authority.

### B. The *Park* Appointment Order

As mentioned, much of Appellants' attack on the Confirmation Order focuses on their belief that the 2023 *Park* Appointment Order for Cape plc is void or invalid. Cape plc has not challenged the *Park* Appointment Order or made any objection or appearance in that lawsuit.

In normal circumstances, Appellants would not have standing to challenge Keith's capacity to file the motion for a receivership because they are not parties in *Park*. In general, a receivership order is not subject to collateral attack by a third party unless the order is void. *See Green v. Bookhart*, 19 S.C. 466, 470–71 (1883) ("A third person, when sued, cannot object to the regularity of the receiver's appointment when the judgment debtor has waived the objection . . . " (cleaned up)). However, "[i]f the court is without jurisdiction to appoint a receiver the order is void and may be attacked or disregarded whenever it comes collaterally in question." *Porter v. Brown*, 149 S.C. 151, 162 n.1, 146 S.E. 810, 814 n.1 (1929) (quoting 34 Cyc. p. 168) (J. Cothran, concurring in result); *see also Grant v. A.B. Leach & Co.*, 280 U.S. 351, 359 (1930) (holding validity of receivership appointment "could not have been questioned by a collateral attack in another court"); *Hudson v. All Star Mills, Inc.*, 315 S.E.2d 514, 516–17 (N.C. Ct. App. 1984); Clark, *supra*, at § 109; 16 Fletcher Cyc. Corp. § 7764 (2025).

Here, Appellants are parties in *Tibbs*. Because the *Park* Appointment Order and the Confirmation Order have been filed in *Tibbs*, Appellants may challenge the receivership directly. We emphasize, however, that an order appointing a receiver may not be challenged in a collateral case unless it is shown the appointment order is void.

We remind that an order is only void if it is issued from a court that lacked personal jurisdiction or subject matter jurisdiction. *Thomas & Howard Co. v. T.W. Graham & Co.*, 318 S.C. 286, 291, 457 S.E.2d 340, 343 (1995) ("Irregularities which do not involve jurisdiction do not render a judgment void."). Appellants make numerous claims that the Confirmation Order is void. There is no question the trial court had subject matter jurisdiction over the wrongful death action and the receivership motion, and the trial court's rulings that it had personal jurisdiction over Cape in *Park* are not before us. Despite the fact that the issue of personal jurisdiction is interlocutory, we have reviewed the trial court's order denying the Appellants' motion to dismiss for lack of personal jurisdiction and the Confirmation Order, and there is ample prima facie evidence of personal jurisdiction over each of the Appellants and Cape. This is despite the fact that Cape has not appeared at all in this case and the Appellants have refused to engage in even jurisdictional discovery. The trial court still has to review the issue on the merits, and the parties, including Appellants, may present additional evidence as to this issue at trial. We therefore cannot accept Appellants' arguments that the Confirmation Order is void.

### i. Keith's Authority as Personal Representative

We reject Appellants' suggestion that the *Park* Appointment Order is invalid because Ms. Park's estate was closed when the order was entered. Appellants insist the reopening of the estate and Keith's reappointment as personal representative cannot relate back to or otherwise revive the original receiver appointment order. Yet that is precisely what section 62-3-701 of the South Carolina Code (2022) allows.

Appellants point us to a New York case that concluded South Carolina law did not allow relation back of actions taken before an estate is reopened for subsequent administration. *See Bargil Assoc., LLC v. Crites*, 135 A.D.3d 676, 677–78 (N.Y. App. Div. 2016). The sparse *Bargil* decision overlooked key provisions of our Probate Code. Although it cited to section 62-3-608 of the South Carolina Code (2022), which states the termination of the appointment of a personal representative "ends the right and power pertaining to the office," the section goes on to provide an exception that allows the terminated personal representative to "at any time prior to distribution or until restrained or enjoined by court order . . . perform acts necessary

to protect the estate[.]" *Id.* And where, as here, a successor personal representative is appointed pursuant to section 62-3-613 of the South Carolina Code (2022), he has "the same power and duty as the original personal representative to complete the administration and distribution of the estate[.]" S.C. Code Ann. § 62-3-716 (2022). And once a personal representative or successor personal representative is appointed, his powers "relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." § 62-3-701.

This statutory scheme confirms that Keith's reappointment related back in time and gave him the power and authority to seek appointment of the Receiver in *Park* on behalf of his mother's estate. The *Bargil* decision misunderstood this process, and it relied on two cases that pre-dated our adoption of the Probate Code. These cases had held that a person whose appointment as an administrator of an estate had been terminated had no authority or capacity to bring a wrongful death action on behalf of the estate, and any subsequent appointment could not relate back to the initial filing. *See Cockcroft v. Airco Alloys, Inc.*, 276 S.C. 184, 277 S.E.2d 587 (1981); *Glenn v. E.I. DuPont De Nemours & Co.*, 254 S.C. 128, 174 S.E.2d 155 (1970). Appellants proclaim these cases still control.

But we repudiated *Cockcroft* and *Glenn* in *Thomas v. Grayson*, 318 S.C. 82, 456 S.E.2d 377 (1995). There, Ms. Thomas, a foreign personal representative, brought a wrongful death action in South Carolina. The defendants contended Ms. Thomas lacked the capacity to sue because she had not filed the necessary papers in the South Carolina probate court to authenticate her appointment. By the time she later filed the papers, the statute of limitations on the wrongful death suit had run, and the defendants moved to dismiss on that basis. Answering a certified question from the federal district court, we held that under Rules 15(c) and 17(a) of the South Carolina Rules of Civil Procedure, the amendment of the complaint that reflected the authentication related back to the filing of the original complaint, which was within the statute of limitations. We noted that the rationale of *Cockcroft* and *Glenn* "was based on the idea that a change in [the] plaintiff's capacity to sue was tantamount to bringing a new cause of action." *Thomas*, 318 S.C. at 89, 456 S.E.2d at 380. We explained this rationale no longer exists given the pleading rules set forth in Rules 15(c) and 17(a), which now permit amendments to pleadings to relate back, so that legitimate claims are not tossed out on "a technicality in the pleading." *Id.* at 89, 456 S.E.2d at 380–81. Because this holding was dispositive, we did not address the district court's question of whether § 62-3-701 also allows relation back. We now hold it does.

Appellants claim that § 62-3-701 only applies to actions taken by someone on behalf of an estate before it is opened, not to actions taken after an estate has been closed. Appellants' interpretation draws no support from the words of the statute, nor from the well of common sense. It would be senseless to say that someone's beneficial actions taken on behalf of an estate after the decedent's death but before the estate is first opened could be ratified by the later appointment of a personal representative, but the same actions taken by someone on behalf of a closed estate that is later reopened cannot be so rescued. In either event, the law provides a mechanism for protection of estate property when an estate has not yet been opened or has been closed.

Still, Appellants harken to *McCullar v. Estate of Campbell*, 381 S.C. 205, 672 S.E.2d 784 (2009), where we held a claim brought against an estate that has been closed is a nullity. But *McCullar* is off point. It did not address the effect of reopening an estate or involve the relation back mechanisms of Rules 15 and 17, SCRCP, and § 62-3-701.

## ii. CIHL is the Correct Defendant

Appellants next argue the appointment order is invalid because it appointed a receiver for Cape plc, when the true entity at issue is CIHL. As we stated at the outset, the Confirmation Order corrected this matter and ruled the proper party is CIHL. It is settled law that even a judgment is not void because it misnames or fails to name the real party in interest if no one has been misled or prejudiced. *See Griffin v. Capital Cash*, 310 S.C. 288, 292, 423 S.E.2d 143, 146 (Ct. App. 1992). It must be remembered that receivership is an equitable remedy. Equity frowns upon forfeiture. So do our rules of civil procedure: Rule 17(a) of the South Carolina Rules of Civil Procedure prohibits dismissal of an action simply because the real party in interest was, through honest mistake or difficulty in ascertaining identity, not named. *See Fisher on behalf of estate of Shaw-Baker v. Huckabee*, 422 S.C. 234, 239, 811 S.E.2d 739, 741 (2018).

Appellants further contend CIHL was not a named defendant in either *Park* or *Tibbs*, that the court had no personal jurisdiction over Cape, and that Cape has never been served. The trial court has already ruled that service of the first amended complaint was proper on CIHL and Cape plc in *Park* and personal jurisdiction existed. The relevant part of the first amended complaint named "Cape Intermediate Holdings Limited f/k/a Cape Intermediate Holdings plc, individually and as successor-in-interest to Cape Asbestos Company" and "Cape plc, individually and as successor-in-interest to Cape Asbestos Company" as defendants. Appellants' appeal of those

rulings have been deemed interlocutory, and we will not review the rulings here today. Appellants' view that the second amended complaint (whose allegations against Cape and CIHL were identical to the first amended complaint) is the "operative" pleading against CIHL and Cape is mistaken. And we have just held that the trial court has cured any misnomer that has occurred. The music has stopped on Appellants' name games.

II.

A. Challenges to the Confirmation Order

Having concluded the initial *Park* Appointment Order was valid, we now take up the array of substantive challenges Appellants have lodged against the Confirmation Order. The first batch of these challenges relate to Appellants' belief that the Receiver's claims are barred by *Adams v. Cape Industries plc* (1990) 1 Ch 433 (CA), and a 2024 decision by a trial judge from the High Court of Justice for England and Wales (EWHC) that reaffirmed *Adams*, *CIHL v. Protopapas* [2024] EWHC 2999.

i. The Effect of *Adams* and the EWHC's Ruling

Once the Receiver began to investigate whether Cape had any insurance coverage or other assets responsive to the damages sought against it, CIHL and Cape Jersey asked the EWHC to enjoin the Receiver from acting on their behalf. They contended that the order appointing the Receiver is of no effect in the United Kingdom because there was no personal jurisdiction over them. They pointed to the 1990 English decision in *Adams v. Cape*, which, as a matter of private international law, refused to recognize and enforce a default judgement Mr. Adams and others had obtained against Cape in a Texas federal court. The *Adams* court concluded Cape did not have enough presence in the United States to justify the federal court's exercise of jurisdiction over it, at least for purposes of enforcing the foreign default judgment in England. The *Adams* court ruled that Cape's Illinois subsidiary's distribution of Cape's asbestos throughout the United States could not be attributed to Cape as a matter of English law.

The EWHC saw no daylight between the Texas default order at issue in *Adams* and the order appointing the Receiver for Cape. In its view, the United Kingdom court did not have to recognize or enforce an in personam judgment against Cape because *Adams* had declared for all time that, according to principles of private international law, Cape was not present in the United States. Interestingly, although the Receiver had not appeared and was a United States citizen, the EWHC summarily found it

had personal jurisdiction over the Receiver, though this finding was unaccompanied by any facts, logic, or law.

The EWHC granted the injunction, and its order purports to bar the Receiver from acting on behalf of Cape anywhere in the world. Although the EWHC acknowledged the Receiver had been appointed by and is an officer of a South Carolina court, it refused to craft a "carve-out" to its injunction order to allow the Receiver to continue to act in South Carolina. After extensive discussion, the EWHC concluded comity did not block it from enjoining the Receiver, the arm of a state court of the United States, for "[u]nder English law the receiver should not be in a position to conduct proceedings." The EWHC took pains to disclose it intended "no disrespect" by this ruling, and it did not "sit as some sort of appellate court" from a South Carolina trial court, though it appreciated its ruling "brings about a clash between two court systems."

The EWHC did what it believed English law required it to do. We do not quite follow how a receiver–an officer of the court of a sovereign nation–can be subject to fines, costs, or imprisonment for carrying out the duties that court has authorized him to undertake, and for which the law may offer him immunity and other protection, but that is a matter, perhaps, for another day. As noted, the EWHC is a trial court, and appeals from it go first to the Court of Appeals and then to the Supreme Court of the United Kingdom. We are confident the EWHC would be amazed at how Appellants have interpreted its ruling and *Adams*. According to Appellants, those decisions mean that an American court applying American law is barred from finding that it has personal jurisdiction over Cape. One of the Appellants made this breathtaking statement in its reply brief: "[T]he *Adams* courts declined to recognize the Texas judgment for a reason that United States courts themselves would require: the absence of personal jurisdiction over Cape." Of course, the Texas federal court implicitly found it had personal jurisdiction over Cape. The EWHC was careful to note that *Adams* had stated that in deciding whether a foreign court has jurisdiction over a party sufficient to warrant enforcement of the foreign judgment in England, English courts "will apply not the law of the foreign court itself but our own rules of private international law." The EWHC, further quoting *Adams*, observed that English principles of private international law "will by no means necessarily coincide with the rules applied by the foreign court itself in governing its own jurisdiction . . . our courts are generally not concerned with these rules."

Appellants maintain no South Carolina or other court can go behind *Adams* and attribute the activities of the subsidiary to Cape or its successors or affiliates,

including Appellants. Appellants go so far as to argue that *Adams* resolved for all time that Cape has never been "present" in the United States for the purpose of personal jurisdiction. We cannot imagine a more misguided view of comity than what Appellants are proposing: that the issue of when the court of one sovereign nation may exert personal jurisdiction over a party should be decided by the laws of another.

Although the EWHC declined to grant comity to the South Carolina receivership order, we suspect it would be horrified to learn that the Appellants here are asking us to declare that its ruling displaced the well-developed South Carolina and federal common, statutory, and constitutional law governing personal jurisdiction in South Carolina courts. That was never the EWHC's stated intention, and no fair reading of its ruling could lead to such an incredible conclusion. We therefore decline Appellants' request, and by doing so, to paraphrase Benjamin Franklin, save the EWHC from such mortification. 3 John Adams, *Diary and Autobiography of John Adams* 422 (Butterfield, et. al. eds., 1961).

We brush aside as unworthy of comment Appellants' fanciful argument that our Reception Statute, section 14-1-50 of the South Carolina Code (1976), requires us to apply *Adams* and the EWHC's rulings as if they were the binding law of this State.

## ii. Estoppel and Res Judicata

We now turn to Appellants' various estoppel and res judicata arguments. All of these arguments are of a common thread: that the Receiver should be barred from taking any position inconsistent with the *Adams* decision, including its finding that under English law Cape's American subsidiary was not its alter-ego and the subsidiary's contacts could not be attributed to Cape for purposes of determining personal jurisdiction. The EWHC scoffed at CIHL's attempt to use this same theory to apply estoppel against the Receiver. (Coincidentally, as far as we can tell, this is the only portion of the EWHC's ruling that Appellants do not believe binds us.) Like the EWHC, but for different reasons, we reject Appellants' various estoppel and res judicata arguments.

Appellants' estoppel and res judicata arguments overlook the real import of *Adams* and distort the doctrines. Res judicata, or claim preclusion, bars a later suit by the same party when there has been a previous adjudication by a court of the same subject matter at issue in the later suit. *Hughes on behalf of Est. of Hughes v. Bank of Am. Nat'l Ass'n*, 442 S.C. 113, 130–31, 898 S.E.2d 102, 111 (2024). Res judicata does not apply because the subject matter of the *Adams* and EWHC decisions was

enforcement of a foreign judgment under principles of English law. The same goes for Appellants' collateral estoppel (also known as issue preclusion) arguments. Collateral estoppel "bars the relitigation of only the particular issues that were actually litigated and decided in the prior suit." *Catawba Indian Nation v. State*, 407 S.C. 526, 537, 756 S.E.2d 900, 906 (2014). All *Adams* decided was that a Texas federal court judgment was not enforceable against Cape in the United Kingdom. The conclusions of *Adams* may be preclusive in later United Kingdom litigation, but they pack no punch under the state or federal law of a court in this country. In essence, Appellants ask us to treat the judgment of a Texas federal court that applied United States law as having been overruled by a later decision of a United Kingdom court applying English law. Whether a South Carolina court can enforce personal jurisdiction over a party is a matter determined solely by South Carolina and federal law, not the law of a foreign country.

Appellants also urge that *Adams* bars the Receiver's third-party claims here because it held that Cape's American subsidiary was not its "alter-ego" and could not be otherwise used to pierce Cape's corporate shield. Once again, Appellants' aim is off. As far as we know, no court has considered the merits of the claims the Receiver makes in his third-party complaint. These claims allege that Appellants and other third-party defendants–not Cape's long gone American subsidiary that was the sole focus of *Adams*–are alter egos of Cape. Whether they are may be a matter to be decided under South Carolina law, or the laws of England, France, or another jurisdiction. *See Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 650, 817 S.E.2d 273, 278 (2018).

Although Appellants claim the Receiver is bound by the positions Cape took in *Adams* and has since taken, when it comes to a Receiver, estoppel does not always work in the way Appellants imagine. Although a Receiver "stands in the shoes" of the party, he is not always bound by the party's previous actions. This is true when it is alleged the party's previous transfers or activities were fraudulent. Clark, *supra*, at § 802. One need not have a wide imagination to understand why. *See Scholes v. Lehmann*, 56 F.3d 750, 754–55 (7th Cir. 1995) (explaining why a receiver for a corporation is not always subject to equitable defenses that would otherwise apply against the corporation).

III.

A. The Proper Scope of the Pre-Judgment Receivership over Cape

Appellants maintain South Carolina law only allows a receivership over a foreign corporation if there is specific, identified property of the corporation within this state. According to Appellants, this is made plain by section 15-65-10 of the South Carolina Code (2005), which provides in part:

> A receiver may be appointed by a judge of the circuit court, either in or out of court: . . .
> (4) When a corporation has been dissolved, is insolvent or in imminent danger of insolvency or has forfeited its corporate rights, and, in like cases, of the property within this State of foreign corporations; and
> (5) In such other cases as are provided by law or may be in accordance with the existing practice, except as otherwise provided in this Code.

Pushing this point further, Appellants declare that, outside of its in-state tangible property, "a foreign corporation can never be in receivership" under South Carolina law. Appellants list no authority for this sweeping statement because there is none. And a quick glance at § 15-65-10 proves that foreign corporations are not exempt from the reach of the receivership statute.

The Confirmation Order relied on sections (4) and (5) to justify the receivership appointment. We conclude the trial court's ruling that Cape was in danger of insolvency lacks adequate evidentiary support, so we reverse that part of the Confirmation Order that relied on section (4) to justify appointment of the Receiver.

We hold the trial court was well within its discretion in ruling that section (5) authorized the appointment of a pre-judgment receiver over Cape. "Our law allows appointment of a Receiver in several circumstances, including '[i]n such other cases as are provided by law or may be in accordance with the existing practice, except as otherwise provided in this Code.'" *Welch*, 445 S.C. at 659, 916 S.E.2d at 330 (quoting § 15-65-10(5)). This language was modeled on the 1848 New York Civil Code. "At common law, an equity court had the inherent power to appoint a Receiver before judgment." *Id*. "A Receiver may only be appointed before judgment in the rarest of cases, when 'there is the strongest reason to believe that the plaintiff is entitled to the relief demanded in his complaint, and there is danger that the property will be materially injured before the case can be determined.'" *Id*. (quoting *Richland Cnty. v. S.C. Dep't of Revenue*, 422 S.C. 292, 313, 811 S.E.2d 758, 769 (2018)). "This extreme power may only be used in extreme cases, such as where a defendant's conduct demonstrates it is fraudulently concealing or disposing of assets that may be responsive to a later judgment." *Id*. The extreme power of imposing a receivership before judgment can be used where the defendant engages

in what our decisions have coined, a bit oxymoronically, "moral fraud," defined as "a conscious intent to *defeat, delay, or hinder* his creditors in the collection of their debts." *Virginia-Carolina Chem. Co. v. Hunter*, 84 S.C. 214, 200–21, 66 S.E. 177, 179 (1909) (emphasis added). This phrase–"to defeat, delay, or hinder"–echoes the ancient words of the Statute of Elizabeth, which prohibits fraudulent transfers. S.C. Code Ann. § 27-23-10 (2007).

The trial court had the discretion to appoint a receiver pursuant to § 15-65-10(5) because Cape has engaged in decades of moral fraud in asbestos litigation, including in this case. As in *Welch*, Cape's conduct in this case "demonstrates it is seeking to evade its responsibilities as a civil litigant" by refusing to participate at all in *Park* and this case, or any other United States asbestos cases. *Welch*, 445 S.C. at 331, 916 S.E.2d at 661. The record shows Cape has resolved as a matter of corporate policy to not engage in United States asbestos litigation because it could not "foresee any court . . . enforcing a judgment which would have enormous financial . . . repercussions, *when we really cannot be said to have a moral responsibility and are simply victims of the US product liability cult*." (emphasis added). Appellants contend Cape's corporate machinations are legitimate tactics under English corporate law and have been blessed by English courts. But what may be legitimate corporate structuring in a company's home country may still be deemed illegitimate by the liability laws of a foreign country where that company has caused harm.

Cape's intent to defeat and hinder the *Tibbs* and *Park* plaintiffs has gone well beyond the legitimate efforts of a party defending itself by the rights granted by civil procedure. Two episodes bear this out. The first occurred when the Receiver subpoenaed Lloyds of London to determine if it had issued any relevant insurance policies to CIHL. Learning of the Receiver's contact, Ran Oren, the sole director of CIHL, wrote Lloyds on Appellant Altrad's letterhead and instructed Lloyds not to obey the subpoena based on the EWHC's injunction against the Receiver. Mr. Oren may have felt he needed to protect CIHL's interests by alerting Lloyds of the injunction, but we think it unlikely he would have written the letter in the way he did if no insurance existed. A bit dog barks.

The second episode involved a mutual release CIHL, the Altrad Appellants, and some of the other third-party defendants in *Tibbs* entered into after the Receiver had been appointed. In the release, the parties each gave up any claim they may have against the other related to this case or any other asbestos case in the United States. The release was a brazen attempt to "defeat, delay, or hinder" the Tibbs and other alleged asbestos victims in this country. *Virginia-Carolina Chem. Co.*, 84 S.C. at 200–21, 66 S.E. at 179.

Both episodes were an unlawful interference with property under the control of the court and the Receiver. *See Ex Parte Tyler*, 149 U.S. 164, 181 (1893) ("No rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court, and that if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor."); Clark, *supra*, at § 253 (explaining that appointment of a receiver "prevents the defendant from dealing with the chose in action to the prejudice of the receiver, and of the res in control and possession of the court"); 75 C.J.S. Receivers § 95 (March 2026 Update).

We agree, however, with Appellants that Cape's long corporate history of selling asbestos in the United States knowing the danger it posed is not the type of moral fraud relevant to establishing a receivership, as it is not evidence of actions by Cape to "defeat, delay, or hinder" the Tibbs or others from pursuing their claims. *Virginia-Carolina Chem. Co.*, 84 S.C. at 200–21, 66 S.E. at 179.

### B.  Modification of the Confirmation Order

The Confirmation Order amended the scope of the Receivership Order, deleting the paragraph that gave the Receiver such sweeping powers over Cape's business. However, it left intact the broad authority granted to the Receiver to "administer all assets of Cape, accept service on behalf of Cape, engage counsel on behalf of Cape, and take any and all steps necessary to protect the interests of Cape whatever they may be."  March 16, 2023 *Park* Appointment Order at 1.

A pre-judgement receiver differs from a post-judgment receiver in many ways. While the order appointing a general receiver after judgment may authorize the receiver to act on a corporation's behalf in other matters and lawsuits in which he has not been appointed, a pre-judgment receiver is limited to conducting activities in and connected directly to the pending lawsuit.  While we affirm the appointment of the pre-judgment receiver for Cape under the circumstances here, we modify the Confirmation Order and hold the pre-judgment receiver may only operate to collect insurance assets and pursue such legal and equitable claims the corporation may have that can result in the receipt of assets responsive to the Tibbs' pending claims.

Allowing the pre-judgment receiver to operate in this limited scope does not impair Cape's right as a foreign corporation to conduct its internal affairs free from interference by a foreign court.  The internal affairs of Cape–its relations between its officers, directors, shareholders, and agents–are not affected by the Confirmation

Order as we have modified it. *See Pertuis*, 423 S.C. at 649–50, 817 S.E.2d at 278 (defining internal affairs).

We have held that an action to pierce the corporate veil or determine if a single business enterprise/amalgamation exists does not implicate the internal affairs doctrine. See *id.* at 650, 817 S.E.2d at 278 (the "threshold amalgamation issue is not as much a question of the inner-workings of foreign corporations as it is an assessment of whether these entities actually operate as a single business enterprise, and thus should be treated as a single entity"). Other jurisdictions agree. *See*, *e.g.*, *Kaiser-Francis Oil Co. v. Deutsche Oel & Gas, S.A.*, 566 P.3d 252, 264–66 (Alaska 2025) (citing *Pertuis* and collecting cases). We leave it to the trial court to consider *Pertuis* and determine whether the receiver's third-party claims should be controlled by South Carolina law or the law of the jurisdiction of Cape's incorporation or some other jurisdiction.

Appellants insist that litigation decisions, such as whether and how to sue, defend a lawsuit, or accept service are solely for Cape's board of directors and cannot be lawfully made by a receiver. If Appellants were right, then a receiver–even one appointed after judgment–could never act in the lawsuit in which he has been appointed. And if litigation decisions are exclusively for Cape's board, one wonders how Appellants can make them on Cape's behalf. Appellants' argument highlights that Cape is the architect of its own predicament. It has never appeared to defend its interests, and to argue that the very conduct that made a receivership necessary now somehow requires its reversal proves only that irony lives. Although in future cases a pre-judgment receiver should not be authorized to accept service in other lawsuits, Cape has had ample opportunity to appear in this case. Its pursuit of the injunction order in England and entering into the release demonstrates it is acutely aware of and has actual notice of the claims against it. In fact, the release Cape signed recited that CIHL and Cape plc were "separately named defendants" in the *Park* action and that Cape plc has also been sued in the *Tibbs* case. We note too that the very authority that Appellants claim states the rule that a corporation's litigation decisions are solely for the corporation's board carries a qualification Appellants ignore: that the rule only applies when the board is disinterested and not burdened by a conflict of interest. *See Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 130–33 (4th Cir. 2020). And *Star* did not involve a corporation in receivership.

Clinging to their claim that a South Carolina court has no authority to appoint a receiver over an out-of-state corporation, Appellants ask us to follow *In Re Whittaker, Clark & Daniels, Inc.*, 2026 WL 1131929 (3d Cir. Apr. 26, 2026), which considered whether a South Carolina post-judgment receiver for a New Jersey

corporation could prevent the corporation from filing bankruptcy. The Third Circuit held the receiver could not prevent the filing because he had not sought to enforce the receivership order in New Jersey or petitioned to be appointed an ancillary receiver in that state. Because he did not do so, the corporation's board retained the sole power to file bankruptcy. However, the Third Circuit acknowledged "New Jersey law permits its courts to recognize foreign receivership orders and appoint an ancillary receiver to aid in the execution of foreign judgments, including by enjoining the corporation and its board from taking specific actions and exercising specific powers."

The Third Circuit also emphasized the receivership order did not by its terms give the receiver control over the corporation's internal affairs. Although that resolved the issue, the Third Circuit went on to observe that the full faith and credit clause may not require a state to recognize and enforce another state court judgment purporting to exercise authority over the internal affairs of a foreign corporation.

*Whittaker* therefore dealt with a much narrower and far different question than the ones before us involving CIHL. Nothing in *Whitaker's* holding or its dicta touches the question of whether South Carolina law allows a South Carolina court to appoint a pre-judgment receiver over a foreign corporation for the purpose of pursuing potential insurance assets and certain claims. As we have held, these pursuits do not tread on the corporation's internal affairs.

### C. Bond

Appellants insist that both the *Park* Appointment Order and the Confirmation Order must be reversed because they failed to set a bond as required by section 15-65-60 of the South Carolina Code (2005). We disagree.

First, Appellants have no standing to enforce the bond provision because they do not possess or have the right to possess the property covered by the Confirmation Order as we have modified it, i.e. Cape's insurance assets and third-party claims. *See Ex parte Rowley*, 200 S.C. 174, 186, 20 S.E.2d 383, 384, 387 (1942) (holding one not in possession of subject property in receivership may not challenge lack of bond). Unless, of course, Appellants are admitting they and Cape are in fact alter-egos or a single business enterprise.

Second, the lack of a bond does not render a receivership order void. As we earlier noted, a void order is one made by a court without jurisdiction. Our earlier cases had a broader view of what makes a receivership order void. *See Truesdell v.*

*Johnson*, 144 S.C. 188, 204, 142 S.E. 343, 348 (1928) (providing the failure to have a clause in the appointment order fixing the value of the property "is mandatory, and without such clause the order is void").  The trial court's failure to set a bond in a receivership case does not affect the court's subject matter jurisdiction over the issues in the case or its personal jurisdiction over the parties.  *Thomas & Howard Co.*, 318 S.C. at 291, 457 S.E.2d at 343 ("Generally, a judgment is void only if a court acts without jurisdiction.  Irregularities which do not involve jurisdiction do not render a judgment void." (internal citations omitted)).  The failure to set a bond does not render an order void.  Rather it may–though not always as we discuss below–render an order invalid or, put another way, voidable.  *See Innovative Waste Mgmt. Inc. v. Crest Energy Partners GP, LLC*, 423 S.C. 611, 614, 815 S.E.2d 780, 781 (Ct. App. 2018) ("A voidable judgment is nothing more than one made in error by a court with jurisdiction . . . .").  Accordingly, we clarify *Truesdell* and hold that a receivership order that fails to set a bond is not void.

It is true § 15-65-60 states that a bond must be set.  When receiverships began, they were designed to protect property such as rents, crops, livestock, or other personal property from being dissipated to the disadvantage of the owner's looming creditors.  These items were tangible, had intrinsic market value, and were often portable.  A bond is designed to cover the owner's loss if it turns out the receivership wrongfully deprived the owner of the use (and sometimes the literal fruits) of his property.  This dynamic is not in play here.  Here, the Receiver is authorized to seek and collect only two things: insurance assets and whatever he may collect by his third-party actions.  The insurance assets are worthless to anyone but Cape and any potential judgment creditor.  The value of the third-party claims need not be bonded, for if the Receiver obtains judgment based on them, it will benefit Cape.  We therefore hold there is no rational need for a bond under the circumstances here.  "The reason for a rule must control the application of the rule."  *S.C. Ins. Co. v. James C. Greene & Co.*, 290 S.C. 171, 188, 348 S.E.2d 617, 626 (Ct. App. 1986).

### D. Release

As we have held, the nature and timing of the release is evidence of moral fraud justifying the appointment of a pre-judgment receiver.  We do not, however, otherwise rule on the effect or validity of the release.  A release is an affirmative defense that must be pled.  Rule 8, SCRCP.  The trial court must rule on the merits of this defense, and nothing in our decision here today may be construed as affecting the merits.

IV.

## A. The Trial Court's May 23, 2024 Sanctions Order in *Tibbs*

We address one final item Appellants raise on appeal, even though it does not relate directly to the Receivership appointment.  Appellants believe they have spotted yet another void order by the trial court or, in their words, a "jural nullity": the trial court's May 23, 2024 order that granted the Receiver's motion for sanctions and imposed adverse inferences against Appellants.  Appellants claim this order is void because the trial court had no jurisdiction over the case because Appellants' appeals of several earlier orders were still pending.

It appears Appellants had three appeals pending when the May 23, 2024 order was entered: two from the December 6, 2023 order denying Appellants' motions to dismiss for lack of personal jurisdiction and to dissolve the receivership, and one from the March 12, 2024 order granting plaintiff's motions to compel discovery.  As Appellants well know, Rule 205, SCACR, by its terms permits a trial court to "proceed[] with matters not affected by the appeal."  Appellants' pending appeals from the order denying the motion to dismiss and the motion to dissolve the receivership did not affect the matters inherent in the motion for sanctions. Consequently, the trial court retained the jurisdiction to rule upon it.  *See Cousar v. New London Eng'g Co.*, 306 S.C. 37, 40, 410 S.E.2d 243, 245 (1991) (providing "[i]n cases on appeal, the South Carolina Rules of Court provide for the trial court to retain jurisdiction over matters not affected by the appeal," and thus, the trial court's "retention of jurisdiction over discovery in this case was not an abuse of discretion" where the appellants had appealed the denial of their motion to amend their pleadings).

Appellants' pending appeal from the March 12, 2024 order granting the motion to compel discovery did, however, deal with the same issue that the May 23, 2024 order addressed: discovery.  Yet, because Appellants' appeal from the March 12, 2024 order was dismissed as interlocutory, the appeal did not divest the trial court of jurisdiction to enter the May 23, 2024 order.  *See, e.g., United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989) ("Notice of appeal from a non-appealable order, however, does not render void for lack of jurisdiction acts of the trial court taken in the interval between filing of the notice and dismissal of the appeal."); *Euziere v. United States*, 266 F.2d 88, 91 (10th Cir. 1959) (providing "all of the cases hold[ing] that an appeal divests the trial court of jurisdiction over the case . . . presuppose[] that there is a valid appeal from an appealable order," but an attempt to appeal from an order found unappealable by the appellate court "remains just that, an attempt.  It

is a nullity and does not invest the appellate court with jurisdiction, and consequently does not divest the trial court of its jurisdiction"), *cert. granted, judgment vacated on other grounds*, 364 U.S. 282 (1960)); *Hodgson v. Mahoney*, 460 F.2d 326, 328 (1st Cir. 1972) ("While filing a notice of appeal generally deprives the district court of jurisdiction, where the notice is manifestly deficient, e.g. by reason of reference to a nonappealable order, the district court may disregard it and proceed with the case. Otherwise, a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture." (internal citations omitted)).

## B. Appellants' Supplemental Citations

Finally, we are disturbed by the Appellants' misuse of Rule 208(b)(7), SCACR, which allows a party to provide the Court with "supplemental citations." Since oral argument, Appellants have filed three Notices of Supplemental Authority. All are packed with argument, even though the rule flatly states the notice is only allowed to refer to the matter "to which the citations pertain" and "shall, *without argument*, state the reason for the supplemental citations." Rule 208(b)(7), SCACR (emphasis added). Though the notices include some proper supplemental citations, they teem with improper argument (repeating points Appellants have made many times before) and offer irrelevant updates about proceedings pending in other trial courts. After Tibbs' counsel pointed out that argument was not permitted under the Rule, Appellants responded with even more argument. And all of this occurred after our June 26, 2025 order warning that future frivolous filings and inappropriate behavior would have serious consequences. Appellants' misuse of the Rule will be considered at a later date alongside the pending motions for sanctions.

### V.

### Conclusion

We conclude the Confirmation order is not void, and we affirm it as we have modified it today. We reverse the portion of the Order that questioned CIHL's solvency.

**AFFIRMED AS MODIFIED IN PART AND REVERSED IN PART.**

**KITTREDGE, C.J., FEW, JAMES, JJ., and Acting Justice Courtney Clyburn Pope, concur.**